IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ALTURO PASCO,

                Plaintiff

    VS.                    NO. 5:06-CV-141 (CAR)

JAMES DONALD, *et al.*,

                Defendants     **PROCEEDINGS UNDER 42 U.S.C. §1983**
                                                           **BEFORE THE U. S. MAGISTRATE JUDGE**

# RECOMMENDATION

Before the court is the defendants' motion in the above-styled case seeking summary judgment against plaintiff ALTURO PASCO (Tab #34). The defendants' motion is supported by a number of attached exhibits, a brief, and a Statement of Undisputed Material Facts. Plaintiff Pasco has responded to the defendants' motion and has submitted an affidavit and Statement of Disputed Material Facts in support of his response. Tabs #47, 48, and #49. Also in the record is the deposition of the plaintiff taken on December 18, 2006. Tab #39. Plaintiff also has pending a Motion for Injunctive Relief. Tab #23.

Plaintiff Pasco brings this suit pursuant to §1983 and alleges that his right to practice his religion has been unconstitutionally impinged while he has been incarcerated at various prisons in Georgia Department of Corrections. Specifically, plaintiff alleges that under a department-wide policy (which has since been changed), he was required to pay a weekly fee in excess of $80 if he wished to have a special diet to comport with his Muslim beliefs. He avers that those beliefs require that he not eat animal products; he further states, however, that his religion mandates that fish be included as part of his diet. This suit deals with both the original policy and the modified policy under which the plaintiff is currently bound. Plaintiff seeks both injunctive relief and damages.

# SUMMARY JUDGMENT STANDARD

Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c);* ***Warrior Tombigbee Transportation Co. v. M/V Nan Fung***, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See* ***Van T. Junkins & Assoc. v. U.S. Industries, Inc.***, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. ***Hairston v. The Gainesville Sun Publishing Co.***, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. ***Welch v. Celotex Corp.***, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. ***Clark v. Coats & Clark, Inc***., 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. ***Anderson v. Liberty Lobby, Inc***., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[1]

---

[1] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).

**FACTS**

For all times relevant to this action, plaintiff Alturo Pasco was incarcerated in prisons within the Georgia Department of Corrections. Before the Department of Corrections enacted the Alternative Entree Program ("AEP"), every prison in which Pasco was housed abided by Standard Operating Procedure (SOP) VA01-0011 which provided that inmates who had special religious dietary restrictions — including a vegan diet — could purchase meals in accordance with those beliefs through the inmate store, provided that the inmate had available funds in his account. The cost of the special meals was $81.35 per week.

Plaintiff Pasco — a Muslim who believes that it is a sin to eat meat and has not eaten meat since 1989 — did not have available funds in his account and was thus forced to eat a regular prison meal, leaving the meat untouched and eating only the other items on his plate. These other items always included at least a starch and vegetable.

Between April 19, 2005, when Pasco was transferred to Coastal State Prison and July 6, 2006, Pasco — who is 5 feet, 9 inches tall — lost thirty nine pounds; his weight dropped from 251 pounds to 212 pounds. At one point during his incarceration, plaintiff was weighed at 225 pounds and classified by the medical staff at the prison as "obese." In November of 2005, while at Coastal State Prison, plaintiff complained of feeling sluggish, losing weight, and of one instance of being hungry. There is no other evidence in the record regarding any possible effects of the plaintiff's limiting his food intake.

In June of 2006, the Department of Corrections implemented the Alternative Entree Program, SOP IVL01-0027, which permits inmates at certain institutions to eat meals which more closely comport with their religious dietary restrictions. The defendants have submitted the affidavit of Registered Dietician Amy Pataluna which describes in detail the Alternative Entree Program. The Alternative Entree Program provides vegetarian and vegan meals containing sufficient calories and nutrients. The Alternative Entree Program does not permit inmates to eat meat of any variety or to eat fish.[2] Pasco was transferred to an institution which participated in the Alternative Entree Program.

---

[2] Plaintiff alleges that his faith mandates that he consume fish.

## DISCUSSION

In *Elam v. Henderson*, 472 F.2d 582 (5th Cir. 1973) (per curiam), the Fifth Circuit[3] found that a prison's failure to provide meals strictly in compliance with prisoners' religious dietary restrictions was only a "very minor inconvenience[] which may, in a very limited way, impinge on the full exercise of their religious preferences." *Id.* at 582-583. In *Elam*, the Fifth Circuit affirmed the district court's denial of the plaintiffs' claim, in part because of prison budgetary concerns and in part because the plaintiffs had failed to "alleg[e] that the absence of a special dietary menu ha[d] resulted in malnutrition." *Id.* at 582. *See also* **Walker v. Blackwell**, 411 F.2d 23 (5th Cir. 1969).

## SOP VA01-0001

The circumstances in which plaintiff Pasco found himself while the prison was using SOP VA01-0001 appear to parallel those set forth in *Elam*. However, it is still necessary to do further analysis in this case in light of (1) the Supreme Court's ruling in **Turner v. Safley**, 482 U.S. 72 (1987) which provides a different standard for evaluating the constitutionality of prison violations than was used in *Elam*, and (2) the institution of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.A. §2000cc-1.[4]

Under *Turner*, a four part test must be used to determine if a prison regulation that places a substantial burden on a constitutional right of an inmate passes constitutional muster. Logically, before that four part test is applied, a court must find that there has indeed been a substantial burden placed on the plaintiff. The RLUIPA also requires that a "substantial burden" be placed on the plaintiff's right to exercise his religion. "Substantial burden" is defined in this Circuit as follows:

- 4 -

---

[3] This court is bound by Fifth Circuit opinions rendered before October 1, 1981. **Bonner v. City of Prichard**, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*).

[4] As a preliminary matter, the undersigned finds that the plaintiff has provided no evidence of malnutrition. An obese man's losing 40 pounds over the course of fourteen months cannot alone show a lack of proper nutrition, and plaintiff has provided no other evidence aside from unsubstantiated allegations of sluggishness and headaches.

> [A] "substantial burden" must place more than an inconvenience on religious exercise; a "substantial burden" is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct.

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004).

Because the prison policies in the instant case are analogous to those in *Elam*, they can be described as a "very minor inconvenience" and certainly not a "substantial burden." Accordingly, SOP VA01-0001 did not violate either *Turner* or the RLUIPA, and IT IS RECOMMENDED that the defendants' Motion for Summary Judgment be **GRANTED** to the extent that it deals with the policies in place pursuant to SOP VA01-0001.

**Alternative Entree Program**

The AEP, which is the policy utilized at the plaintiff's current institution (and is thus the subject of plaintiff's claim for injunctive relief claim as well as additional damage claims) is far less restrictive than was the original SOP. In the view of the undersigned, the above analysis works even more in favor of the defendants in considering this program. Accordingly, IT IS RECOMMENDED that the defendants' Motion for Summary Judgment be **GRANTED** with respect to all claims dealing with the AEP, and that all of the plaintiff's claims brought pursuant to the new SOP, including claims for injunctive relief, be **DENIED**.

## CONCLUSION

In light of the foregoing, IT IS RECOMMENDED that the defendants' Motion for Summary Judgment be **GRANTED** and that the plaintiff's Motion for Injunctive Relief (Tab #23) be **DENIED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned **WITHIN TEN (10) DAYS** after being served with a copy thereof.

SO RECOMMENDED this 31st day of AUGUST, 2007.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE